UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KEITH WATERS, *pro se*, :
: **MEMORANDUM AND ORDER**
Petitioner, : 10-CV-5700(DLI)
:
-against- :
:
DANIEL MARTUSCELLO, Superintendent, :
Coxsackie Correctional Facility :
:
Respondent. :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Petitioner Keith Waters seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Petition ("Pet."), Dkt. Entry No. 1.) The Kings County District Attorney, as counsel for Respondent, opposes each claim alleged in the Petition. (*See generally* Affidavit of Victor Barall in Opposition to Petition ("Barall Aff."), Dkt. Entry No. 17.) For the reasons set forth below, the Petition is dismissed in its entirety.

## BACKGROUND

### I. The Case against Petitioner

The evidence presented at trial indicates that, on the evening of September 15, 2005, Katherine Pritchard was walking home on Lexington Avenue in Brooklyn. (Transcript of Petitioner's 4/26/06 & 5/1/06 Jury Trial ("Tr.") 44-45; Dkt. Entry No. 19.) When she reached her home, located at 33 Lexington Avenue, a man she identified at trial as the Petitioner, suddenly approached her, pointed a knife at her, took her white purse, and absconded with it. (Tr. 45-49, 60-61.) At approximately the same time that evening, Pritchard's neighbor, Neal Wilkinson, was returning home. (Tr. 102-04.) Wilkinson testified that he saw a man, whom he identified as Petitioner, lunge at Pritchard and take her white purse. (Tr. 103-04.) Wilkinson

ordered Petitioner to drop Pritchard's purse. (Tr. 105.) Petitioner ran away and Wilkinson chased him for several blocks. (Tr. 105-09.)

During this chase, Petitioner ran past a parked, unmarked car, occupied by Parole Officer Brian Mahoney and three fellow parole officers. (Tr. 109-10, 207-10.) They observed Petitioner running down the street carrying a white purse and a knife. (Tr. 206-09.) Moments later, Wilkinson approached the unmarked car and told the parole officers that he witnessed a robbery and was chasing the suspect. (Tr. 109-10, 209-10.) Officer Mahoney and his colleagues drove in the unmarked car towards Cambridge Place, which is the street that Wilkinson said Petitioner ran down. (Tr. 210-12.) Within a few minutes of speaking with Wilkinson, Officer Mahoney and his colleagues located Petitioner. (Tr. 212.) He was crouching by a tree, rummaging through a white purse, with a knife on the ground next to him. (*Id.*) A few minutes later, Wilkinson caught up with the unmarked car, and identified Petitioner as the robber and the white purse as the purse taken from Pritchard. (Tr. 110-14, 210-13, 230, 237.) Another eyewitness identified Petitioner at the scene of the arrest, but did not testify at trial.[1] Shortly thereafter, Police Officer Darien Quash arrived and processed Petitioner's arrest. (Tr. 172-78, 207, 212-13.)

Unlike Wilkinson, Pritchard did not go to the site of the arrest, 106 Cambridge Place, and did not participate in any identification procedures of the Petitioner. (Tr. 90, 93, 97, 191.)[2] Later that evening, she went to the police station to identify her purse. (Tr. 53-55.) After confirming it

---

[1] According to the prosecution, Keith Downs, a homeless man who frequented the area, witnessed the robbery, gave the police a description of the suspect, and identified Petitioner as the robber when Downs arrived at the scene of Petitioner's arrest. (Barall Aff. at 4 n.2.) At the time of the trial, Downs was hospitalized and unable to testify. (*Id.*)

[2] During cross-examination, Pritchard stated that shortly after her attack, an officer took her to "106 Cambridge." (Tr. 93.) She immediately clarified that she meant that she was taken to the police station, which she thought was located at 106 Cambridge. (Tr. 93, 97.) The police station was located on a different street and Pritchard indicated that she never visited the site of the arrest. (Tr. 97.) Furthermore, she never participated in any identification procedures of the suspect at the police station (or elsewhere). (Tr. 90, 93.) She only identified her purse and the knife. (Tr. 20-55, 92.)

2

was hers, Officer Quash took a photograph of it and returned it to her. (Tr. 50-59, 179-80, 184-86, 205-06.)

Petitioner did not present any witnesses at trial.

The jury convicted Petitioner of Robbery in the First Degree (N.Y. Penal Law § 160.15[3]). (Tr. 316-22.) On May 16, 2006, the trial judge sentenced Petitioner to a determinate term of imprisonment of fifteen years, to be followed by five years of post-release supervision.

## II.  Post-Conviction Litigation

On May 26, 2006, Petitioner moved, *pro se*, under New York Criminal Procedure Law § 440.10, to vacate his conviction on the grounds that: (1) his trial counsel deliberately avoided filing Petitioner's pretrial *pro se* motion seeking reassignment of new trial counsel (or, alternatively, the right to represent himself); and (2) the trial court erred by failing to conduct an inquiry into whether his assigned counsel should have been replaced. (*See* Petitioner's 5/26/06 *Pro se* 440.10 Motion ("First 440 Motion"), Dkt. Entry No. 17-2.) The trial court denied his motion, acknowledging that the motion seeking reassigned counsel should have been filed by his attorney before trial, but explaining that: (1) Petitioner's motion for reassignment of counsel did not contain any assertion whatsoever of the right to represent himself at trial; (2) Petitioner did not complain about counsel's trial performance; (3) trial counsel provided meaningful representation; (4) Petitioner was not entitled to successive counsel unless there was good cause for reassignment; (5) Petitioner's "boilerplate" motion did not establish good cause; and (5) the court would have denied the motion had it been filed before trial. (*See* Decision & Order, *People v. Waters*, Indict. No. 6919/05 (Sup. Ct. Kings Co. Oct. 13. 2006); Dkt. Entry No. 17-2.) On January 18, 2007, the New York State Supreme Court, Appellate Division, Second Department

("Appellate Division") denied Petitioner's application for leave to appeal from the October 13, 2006 order denying the First 440 Motion. (Barall Aff. ¶ 11.)

On November 6, 2008, Petitioner moved, *pro se*, for the second time under New York Criminal Procedure Law § 440.10, to vacate his conviction. (*See generally* Petitioner's 11/6/08 Motion to Vacate ("Second 440 Motion"), Dkt. Entry No. 17-1.) Petitioner asserted the same argument contained in his First 440 Motion, and added the argument that, because his trial counsel failed to inform the court of Petitioner's *pro se* motion for reassignment of counsel, Petitioner was deprived of his due process right of access to the courts. (*See id*.) On April 20, 2009, the trial court denied Petitioner's Second 440 Motion, concluding that it was procedurally barred under New York Criminal Procedure Law § 440.10(3)(b) and (3)(c) and also holding that the motion lacked merit. (*See* Decision & Order, *People v. Waters*, Indict. No. 6919/05 (Sup. Ct. Kings Co. April 20, 2009); Dkt. Entry No. 17-3.) On June 18, 2009, the Appellate Division denied Petitioner leave to appeal. (*See* Barall Aff. ¶ 14.)

On March 31, 2009, Petitioner moved, *pro se*, for the third time under New York Criminal Procedure Law § 440.10, to vacate his conviction. (*See generally* Petitioner's 3/31/09 Motion to Vacate ("Third 440 Motion"), Dkt. Entry No. 17-2.) Petitioner argued that: (1) the prosecution failed to disclose exculpatory evidence and witness statements to defense counsel as required under New York Criminal Procedure Law § 240.45[1][a]; and (2) members of the New York City Police Department ("NYPD") falsified evidence. (*Id*. at 81-88.) In particular, Petitioner asserted that: (1) the prosecution withheld information related to an alleged identification procedure by Katherine Pritchard at which she was unable to identify Petitioner as the robber; (2) the prosecution withheld NYPD memo book entries; (3) the prosecution withheld notes regarding a statement allegedly made by Pritchard; (4) the State withheld 911 tapes and

"Sprint reports" regarding the alleged identification procedure involving Pritchard; and (5) members of the NYPD falsified evidence regarding identification procedures involving two eyewitnesses, Neal Wilkinson and Keith Downs. (*Id*.) On February 2, 2010, the trial court denied Petitioner's Third 440 Motion, concluding that Petitioner's allegations regarding the withholding of exculpatory evidence and the falsification of evidence were unfounded. (*See* Decision & Order, *People v. Waters*, Indict. No. 6919/05 (Sup. Ct. Kings Co. Feb. 10, 2010); Dkt. Entry No. 17-3.) On April 2, 2010, the Appellate Division denied Petitioner's request for leave to appeal the denial of the Third 440 Motion. (*See* Barall Aff. ¶ 18.)

In June 2010, Petitioner, through assigned counsel, filed his direct appeal challenging his conviction on the sole ground that the prosecutor's peremptory challenge to three African-American female prospective jurors based on their race and sex violated *Batson v. Kentucky*, 476 U.S. 79 (1986). (*See* Petitioner's Direct Appeal ("Pet'r's App."), Dkt. Entry No 17-3.) On February 1, 2011, the Appellate Division affirmed Petitioner's conviction, concluding that the record supported the trial court's finding that the prosecutor's reasons for her challenges of the three prospective jurors at issue were non-pretextual. *See People v. Waters*, 81 A.D. 3d 673 (2d Dep't 2011). On June 6, 2011, the New York State Court of Appeals denied leave to appeal the order of the Appellate Division affirming his conviction. (*See* Barall Aff. ¶ 21.)

On November 24, 2010, amid filing his various 440 Motions, and before receiving a final decision on his direct appeal, Petitioner filed the instant Petition. Currently, Petitioner remains incarcerated pursuant to the judgment and conviction.

# LEGAL STANDARDS

## I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Notably, *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should

"interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F. 3d 565, 569 (2d Cir. 2005) (citation and quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

## II. Procedural Default

District courts cannot review a state prisoner's federal claims, if they are barred from federal review by an independent and adequate state ground, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). When a state court concludes that a claim is unpreserved for appellate review, this is "an independent and adequate state ground that bars a federal court from granting habeas relief." *Butler v. Cunningham*, 313 F. App'x 400, 401 (2d Cir. 2009) (citing *Coleman*, 501 U.S. at 750); *see also Reid v. Senkowski*, 961 F. 2d 374, 377 (2d Cir. 1992). Therefore, if a state court's holding contains a statement that a claim is procedurally barred based on a state rule, the federal court may not review it, even if the state court also rejected the claim on the merits "in any event." *Fama v. Comm. of Corr. Servs.*, 235 F. 3d 804, 810 n.4 (2d Cir. 2000); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

If a claim has been procedurally defaulted in state court, a federal court may address its merits only if the petitioner demonstrates cause for the default and prejudice to the petitioner or that a fundamental miscarriage of justice will occur if the court does not review the claim. *See*

7

*Murray v. Carrier*, 477 U.S. 478, 485, 492 (1986); *Wainright v. Sykes*, 433 U.S. 72, 87 (1977); *Bossett v. Walker*, 41 F. 3d 825, 829 (2d Cir. 1994). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Clark v. Perez*, 510 F. 3d 382, 393 (2d Cir. 2008). To establish prejudice, the petitioner must show that the alleged violation "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

### III. Exhaustion

Under 28 U.S.C. § 2254(b) and (c) a petitioner must exhaust his or her state court remedies before a federal court may grant habeas relief to a petitioner in state custody. *Galdamez v. Keane*, 394 F. 3d 68, 72 (2d Cir. 2005). The exhaustion of state remedies requirement means that a petitioner must present his or her claim to the highest court of the state. *Harris v. Fischer*, 438 F. App'x 11, 13 (2d Cir. 2011) (citing *Galdamez*, 394 F. 3d at 73). A claim is properly exhausted when the state court has been "fairly apprised" of the factual and legal premises of the constitutional claim. *Id.* (citing *Grey v. Hoke*, 933 F. 2d 117, 119 (2d Cir. 1991)).

## DISCUSSION

### I. Alleged Falsification of Evidence or Nondisclosure of Records

Petitioner asserts that members of the NYPD falsified evidence and withheld exculpatory evidence to conceal the fact that: (1) the NYPD did not recover Katherine Pritchard's purse from Petitioner; (2) Pritchard viewed Petitioner at the location of his arrest, and (3) Pritchard did not identify him as the suspect. (Pet. at 2-7.) Petitioner raised this claim in his Third 440 Motion,

which was denied on the merits in a thorough decision in which the trial court concluded that Petitioner's theories of falsified and suppressed evidence were "unfounded." Petitioner exhausted this claim and, thus, it is properly before the Court. Accordingly, under the AEDPA deferential standard of review, the Court must deny Petitioner's claim unless the trial court's conclusion was an "unreasonable determination of the facts."

A review of the record in this case reveals there was nothing unreasonable about the trial court's conclusion that Petitioner's claims were "unfounded" because Petitioner's unsupported assertions are contradicted by other evidence in the record. First, there is no support for the contention that the prosecution withheld a tape of a 911 call made around the time of the robbery, and the corresponding "Sprint report." The record clearly shows that defense counsel possessed this evidence and used it during the trial to impeach Pritchard. (*Compare* Pet. 3, 6-7 *with* Tr. 86.) Second, the evidence presented at the pretrial suppression hearing and at trial refutes Petitioner's self-serving and unsupported claim of Pritchard's identification of him at the scene of his arrest. (*See* Tr. 90-93.) For example, Police Officer Quash testified that Pritchard did not visit the arrest site. (*See* Tr. 177, 191.) Additionally, documents prepared by the NYPD and the District Attorneys' office shortly after Petitioner's arrest indicate that only two civilians were present at the scene of Petitioner's arrest, Wilkinson and Downs, and they identified Petitioner as the perpetrator. (*See* Tr. 177, 197-98.) Petitioner's support for his claim, a stray comment in a "Sprint report," does not counter the evidence presented by the prosecution. Finally, Pritchard testified at trial that she never participated in any identification procedure. (Tr. 90, 93.) Thus, the trial court's denial of Petitioner's Third 440 Motion is not an "unreasonable determination of the facts." Accordingly, the Petitioner's claim is denied.

## II. Ineffective Assistance of Counsel

Petitioner also contends that he was denied effective assistance of trial counsel in violation of the Sixth Amendment. Specifically, Petitioner asserts that trial counsel failed to: (1) request various records from the police, cellular telephone records, and Petitioner's Metrocard, all of which Petitioner alleges were exculpatory; (2) inform the trial judge that Petitioner wanted new assigned counsel; and (3) investigate the alleged identification procedure involving Katherine Pritchard, at which she allegedly was unable to identify Petitioner as the suspect. (Pet. at 7-11.) Notably, the only portion of this claim that Petitioner exhausted is the failure of his trial counsel to inform the trial judge that Petitioner wanted new assigned counsel. Petitioner raised this claim in his First 440 Motion, which the trial court denied on the merits. Thus, under the AEDPA deferential standard of review, the Court must deny Petitioner's claim unless the trial court's conclusion "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or was an "unreasonable determination of the facts."

The other portions of Petitioner's Sixth Amendment claim are unexhausted as Petitioner never raised them in his direct or collateral appeals. Nonetheless, the Court may "deny a petition on the merits as a matter of discretion, even if the petitioner pressed some unexhausted claims in his or her habeas petition." *Galdamez v. Keane*, 394 F. 3d 68, 71 (2d Cir. 2005); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). Thus, the Court will review Petitioner's entire Sixth Amendment claim on the merits.

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defense." U.S. Const. amend. VI. "[T]he right to counsel is the

right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.*

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *U.S. v. Birkin*, 366 F. 3d 95, 100 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

With respect to the portion of Petitioner's Sixth Amendment claim that faults trial counsel for failing to file his motion for new assigned counsel, the trial court's denial of his claim on the merits did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." The trial court acknowledged that counsel should have filed the motion before trial, but explained that: (1) Petitioner did not complain to the trial court about counsel's performance; (2) trial counsel provided meaningful representation; (3) Petitioner was not entitled to successive counsel unless there was good cause

for reassignment; (4) Petitioner's "boilerplate" motion did not establish good cause; and (5) the court would have denied the motion if it had been filed before trial. (*See* Decision & Order, *People v. Waters*, Indict. No. 6919/05 (Sup. Ct. Kings Co. Oct. 13. 2006); Dkt. Entry No. 17-2.)

In denying Petitioner's Sixth Amendment claim, the trial court did not unreasonably apply federal law. First, a review of the record indicates that trial counsel provided Petitioner meaningful representation by moving for pre-trial suppression of witness identifications of Petitioner, impeaching the prosecution's witnesses at trial, and arguing for a lower sentence. Moreover, even if trial counsel had submitted Petitioner's *pro se* motion for reassigned counsel, the trial court would have denied it as Petitioner's motion consisted of "boilerplate" language and Petitioner failed to demonstrate good cause for reassignment. Second, Petitioner was not prejudiced by counsel's omission. The evidence of Petitioner's guilt was overwhelming. The victim identified him in court as her assailant. A witness to the robbery, who chased Petitioner, identified Petitioner as the assailant. Several parole officers saw Petitioner fleeing the scene of the crime carrying the victim's white purse and a knife in his hands. Petitioner was arrested in possession of the knife he wielded and the stolen purse. Later that evening, the victim identified the purse as hers and the knife found on the ground next to Petitioner as the knife used to perpetrate the crime. Under these circumstances, the trial court did not unreasonably apply federal law in rejecting Petitioner's Sixth Amendment claim as Petitioner failed to establish both the performance and prejudice prongs for such claims.

Finally, Petitioner's unexhausted Sixth Amendment claims are denied as well. These claims fault trial counsel for failing to pursue Petitioner's unsupported theory of Pritchard's failed identification of him, as well as Petitioner's unsupported theory that the NYPD did not recover Pritchard's purse from Petitioner and falsified evidence to conceal that error. As set

forth above, *see supra* DISCUSSION Part I, the evidence in the record squarely contradicts Petitioner's unsupported theories. Thus, counsel was not ineffective for failing to present Petitioner's unsupported theories at trial.

### III. Denial of Right to Access to Courts

Petitioner alleges that he was denied access to the courts as the court ignored his *pro se* pretrial motion for reassignment of counsel. (Pet. 11-12.) Specifically, Petitioner contends that: (1) he submitted his *pro se* motion to the trial court, which forwarded it to his counsel to review; (2) counsel never submitted the motion to the court; and (3) the court should have a procedure to ensure that counsel timely submits such motions. (*Id.*) Petitioner raised this claim in his Second 440 Motion, which was rejected both as procedurally barred under New York Criminal Procedure Law § 440.10(3)(b) and (3)(c) and on the merits. *See* Decision & Order, *People v. Waters*, Indict. No. 6919/05 (Sup. Ct. Kings Co. April 20, 2009).

As set forth under New York Criminal Procedure Law § 440.10(3):

> [T]he court may deny a motion to vacate a judgment when . . .
>
> (b) The ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding in a court of this state . . .
>
> [or]
>
> (c) Upon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so.

N.Y. Crim. Proc. Law § 440.10(3)(b) & (c). Courts have routinely recognized that a petitioner's failure to comply with these statutory procedural requirements in litigating a claim operates as an independent and adequate state law ground barring subsequent federal habeas review of such a claim. *See, e.g.*, *Warren v. Goord*, 2013 WL 1310465, at *16 (E.D.N.Y. Mar. 28, 2013) (holding that the petitioner's claim was procedurally barred and unreviewable by the court because the

state court rejected his claim under N.Y. Crim. Proc. Law § 440.10(3)(b) which is an independent and adequate state law ground for dismissal); *Powell v. Graham*, 2013 WL 37565, at *9 (E.D.N.Y. Jan. 3, 2013) (explaining that the court was barred from reviewing petitioner's claim as the state court properly rejected his claim under N.Y. Crim. Proc. Law § 440.10(3)(c) because petitioner should have raised the claim at an earlier proceeding). Finally, Petitioner has made no showing of "cause for the default and prejudice to the petitioner or that a fundamental miscarriage of justice will occur if the court does not review the claim." Accordingly, this claim is procedurally barred from review by this court.

## IV. Speedy Trial

Petitioner alleges that the delay in the filing and resolution of his direct appeal of the judgment of conviction constitutes a violation of his due process speedy trial rights. (Pet. at 12-13.) As a preliminary matter, this claim is unexhausted as Petitioner did not raise this claim in his prior direct and collateral appeals in state court. Nonetheless, the claim has no merit. *See Ferguson v. Walsh*, 2011 WL 1527973, at *4-5 (E.D.N.Y. Apr. 20, 2011) (holding that the petitioner's right to a speedy trial was not violated by the nearly ten-year delay in adjudication of his direct appeal as petitioner was primarily responsible for the delay and was not prejudiced by the delay). Petitioner was sentenced on May 16, 2006. Petitioner perfected his direct appeal in June 2010. Notably, the Appellate Division resolved Petitioner's direct appeal, affirming his conviction on February 1, 2011. *See People v. Waters*, 81 A.D. 3d 673 (2d Dep't 2011). On June 6, 2011, the New York State Court of Appeals denied Petitioner leave to appeal. (*See* Barall Aff. ¶ 21.) Although the Second Circuit is critical of long appellate delays, *see Muwwakkil v. Hoke*, 968 F. 2d 284 (2d Cir. 1992) (concluding that a fifteen-year delay was excessive), the four and a half-year delay in Petitioner's case was not excessive and was due

14

primarily to Petitioner's failure to perfect the appeal speedily. Moreover, the delay caused no prejudice to Petitioner as the result of his direct appeal would have been the same even if there had been no delay. *See Charleston v. Gonyea*, 2013 WL 1156085, at *5 (S.D.N.Y. Mar. 20, 2013) ("As the Second Circuit has recognized, prejudice does not ensue if the appeal would have had the same result absent the delay." (citing *Diaz v. Henderson*, 905 F. 2d 652, 653 (2d Cir. 1990)). Thus, Petitioner's claim for undue appellate delay is dismissed.

## CONCLUSION

For the reasons set forth above, the Petition made pursuant to 28 U.S.C. § 2254 is dismissed in its entirety. Petitioner is further denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED: Brooklyn, New York
March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge